Hobublower, C. J.
Several errors have been assigned, and argued by counsel, but I shall notice only two of them; 1st. that which relates to the plea of tender ■ and 2dly. that which involves the great question in this cause, viz. the right of the plaintiff to resort back to his execution for the recovery of the five thousand and eighty-three dollars, after having receipted for the same, under the circumstances of this ease.
1. As to the tender. The plea of tender was in proper form, but the defendant did not bring the money into Court, at the time of filing his plea; nor did he do so until eight days after the plea had been filed. This the plaintiff contends was a waiver or abandonment of that plea, and that the defendant ought not to have been permitted to give any evidence under it, or to have derived any benefit from that ground of defence. In answer to this, it is insisted by the defendant’s counsel, and I think correctly, that the plaintiff by replying to the plea of tender^ waived all objection to the irregularity complained of.
Instead of replying, the plaintiff should have treated the plea as a nullity ; or have applied to the Court to have it stricken out. 1 Archb. Pr. 120. If a defendant pleads a tender, with a Proferí in Curia, but does not pay in the money, it is no plea, and plaintiff may sign judgment. Pether and al. v. Shelton, 1 Str. 638 ; Bac. abr. tit. Tender H. 4; Bray v. Booth, Barne’s notes, 252.
The plaintiff’s counsel contended that the replication denying the tender, in modo et forma, made it necessary for the defendant in order to maintain the issue on his part, to shew that he had paid the sum tendered, into Court, but I think otherwise. The *278 Proferí in Qurici, is not a traversable part of the plea; it is only for the information of the plaintiff, that he may take the money out of Court, if he elects to do so.
I am strongly inclined to think that a tender was not a good plea in this case. The general rule is, that it can be pleaded only in an action on a contract, or to a money demand, for which, debt, or indebitatus assumpsit will lie. Whereas this is only a special statutory proceeding to secure to the plaintiff the legitimate fruits of a judgment and execution already obtained and issued. How can a defendant say, he has always been ready to pay, when called upon by a seire facias to shew cause why an execution already issued against him should not be fully and finally executed ? But the parties chose to go to trial upon this plea, and the only question is, whether there was any error in the direction given by the Court, below, to the jury on this part of the case. In my opinion the Court did not err in refusing to charge the jury upon this point, in the manner in which the plaintiff’s counsel required them to charge; but they did commit an error in submitting to the jury, upon the evidence in the case, whether the sum tendered was sufficient to satisfy the- balance then due the plaintiff. On the contrary, the Court ought to have charged the jury, that the defendant had failed to maintain the issue on his part, on the plea of tender. The defendant in his plea alleges a tender on the 24th of March 1826, of two hundred and three dollars, which he avers was the precise balance then due the plaintiff.
The only evidence in support of this plea, was that of Thomas Black, which is, in substance, that “several years ago” the witness saw John Black, the attorney of the defendant, tender to the plaintiff, “ a sum of money in specie, sufficient to pay off a balance on an execution against the said defendant; ” but that he did not recollect the date of the transaction, nor the amount tendered, although he had previously seen the money counted at the house of John Black. The witness further stated his belief, that the sum exceeded two hundred dollars, and that to the best of his récollection, “it was sufficient to pay off the whole balance of debt, interest and costs on the said execution.” — But the witness entirely failed to furnish the jury with any data, from which they could tell, whether his belief was well or ill founded: he *279 does not disclose the source from whence he derived his information, as to the amount due on the execution, nor direct them to any, from which by calculation or otherwise, they can ascertain either the time of the tender or the amounts tendered. In connection with this evidence however, the defendant relies upon the testimony of Cox; but all he says is that the plaintiff admitted a certain statement shewn to him by John Black, to be correct: that statement, it is said, (for it has not been exhibited to the Court) shewed a balance of two hundred and three dollars against the defendant on a certain day. Suppose this to be so; still the jury had no evidence whatever before them, that the tender had been made on that day; nor thatéAaá sum had been tendered.It may be true as argued by defendant’s counsel, that the day, that is, the day laid in the plea, is not material. But there must be evidence, oí' some day certain, oil which the tender was made, so that the jury can ascertain whether the sum tendered, was the precise amount then dne; or there must be some evidence that the amount tendered, whatever it was, was the amount due when the tender was made. In this case there was in my opinion a total failure of evidence in support of the plea of tender; and so the jury ought to have been instructed by the Court. But the great and important question in this cause, remains to be considered.
It is, 2d. Whether the plaintiff has a right to resort back to his execution, for the five thousand and eighty-three dollars, notwithstanding the receipt given by him to Richards and Black, for that sum ?
This question nas been argued, in some measure at least, by counsel on both sides, as if it depended upon, and involved the question whether there had been such a failure of consideration for the money expressed in the receipt, as would entitle the plaintiff to recover it back, if he had actually paid it, in an action for money had and received, or as would in an action against him for the consideration money, have constituted a valid defence at law. Hence much discussion arose, on the validity of the powers of attorney; the authority of the attorneys in fact to make a deed for the farm, and on the question whether there had been such a delivery of a deed, by the defendant or his agents, and such an acceptance of it by the plaintiff, as concluded the parties.
*280 But this is neither an action by the plaintiff to recover back money paid, on a consideration which has failed; nor is it an attempt by him to defend himself in an action against him, for consideration money, on the ground of defect of title. It is a very different case from either of those, and in my opinion depends upon entirely different principles. The plaintiff has obtained a judgment against the defendant, for an admitted debt. — Execution has been issued and levied upon the defendant’s property, and remains unsatisfied in part — the officer to whom the execution was directed, is dead, and the defendant is called upon by a special scire facias under a statute made and provided for such cases, to shew cause, why the sheriff for the time being, should not be directed to sell so much of the estate levied upon, as to satisfy the balance due on the execution. The defendant appears, and admits there is due on the execution, the sum of two hundred and three dollars, but sets up a payment of five thousand and eighty-three dollars, on the 25th March 1825. In proof of that payment, he shews the plaintiff’s receipt for so much purporting to be the amount of the consideration to be paid by him for a certain farm. The plaintiff admits the giving of the receipt, and that it was the intention of the parties, that the amount should be credited on the execution; but he offers to shew, and does clearly establish the fact, that he has been evicted by a paramount title, from the whole of the farm except twelve acres, and that the defendant had never in fact made him a legal title for any part of it. This statement is not seriously denied by the defendant, but still he insists that the plaintiff shall give him credit on the execution, for the whole amount.
By the direction of the statute, the Court is to award a writ to the sheriff for the time being, requiring him to sell the property levied on, by the former sheriff, unless the defendant “shew sufficient matter to the contrary.” Has he done'so? It appears to me, that upon a mere statement of the case, the irrepressible answer of both law and justice, must be in the negative.
If the payment had been in bank notes, and it had turned out that by far the greater part of them were counterfeits, it would not be pretended, that the defendant should have credit for the whole amou nt; and can there be any reason why he should have *281 such credit, if lie undertook to pay in land to which he had no title ? The plaintiff in this case is not obliged to resort to an action, to recover back money he has paid; nor is ho resisting the payment of money on the ground of a defective title. He is only asking the process of the Court, to recover the amount due him on a judgment and execution. He is in possession of the judgment and execution, and is prima facie, entitled to the benefit of them; while the defendant is seeking to deprive him of his vested rights, by setting up a most unjust and inequitable claim.
The reason why a purchaser cannot recover back the consideration money at law, or resist the payment of it in nr against him, after his acceptance of a deed, (if that b Greenleaf v. Cook, 2 Wheat, R. 13,) ou the ground of a dereotive title, or partial failure of consideration, is because a Court of law cannot reach the whole case, and do equal and exact justice between the parties. It cannot decree a reconveyance or a delivery up of the deed; or enquire into all the circumstances, as a Court of equity may do, and ascertain how far one part of the bargain formed a material ground for the rest, and award compensation according to the real state of the transaction. Johnson v. Johnson, 3 Bos. and Pul: 162.
But this, as I have before remarked, is neither an action to recover back money paid; nor an attempt to resist the payment of money. The plaintiff comes into Court to get the benefit of an existing judgment aud execution. In order to repel this application successfully, it is incumbent on the defendant to shew that the plaintiff' lias received satisfaction, or released the debt. He has done neither, and he ought not therefore to prevail. If the aid of a Court of equity is necessary to set the matter right between the parties, let him seek it, who by his own folly, has involved himself in the difficulty.
But I am by no means clear, that this is not a case, in which the plaintiff might recover back the money, if he had paid it, in an action at law, or successfully defend himself if sued-for it, upon the ground of a total failure of consideration. This is not the case of incumbrances, nor of partial defects of title, or of clouds and shadows hanging over it, that may be removed or dispelled by a Court of equity. The plaintiff has actually been *282 evicted by title paramount, of the whole farm, except about one-seventeenth part of it, and for that, he manifestly has no title.
In Chambers v. Griffith, 1 Esp. JR. 150, the plaintiff had purchased three several houses and lots, at distinct sales at auction —the title to one of them failed, and Lord Kenyon sustained an action to reeover'back the deposit money paid for all three of the lots, on the ground that it was an entire purchase. But in this case, the plaintiff bought the whole farm; at one sale; at so much by the acre for the whole — and a failure of title to a part of it, was a failure of title to the farm, the thing purchased by the plaintiff. Farrer v. Nightingal, 2 Esp. R. 639. It is true, in those cases, the contract had not been executed, nor any deeds delivered and accepted; and whether in this case, any deed had actually been accepted by the plaintiff, was a question of fact for the jury; and I think the evidence would fully sustain a verdict for the plaintiff on this ground. But it is unnecessary to pursue this question any further; because I am clearly of opinion that the Court erred in charging the jury, that if they were of opinion, the plaintiff accepted the deed and took possession under it, that he was bound to credit the money mentioned in the receipt of 25th of March 1825, on the execution. Instead of which, under the evidence in this case, they ought to have charged the jury, that the plea of payment was not supported. Judgment must therefore be reversed.
Ford, J. John Earle obtained a judgment again'st William L. Earle, for six thousand dollars, in the Common Pleas of Burlington county, and an execution therefor was levied on the defendant’s real estate, but before a sale under that levy, could be effected, the sheriff died. The plaintiff thereupon, pursuant to the Statute, Rev. Laivs, 303, see, 3, sued out a seire facias for the defendant to shew cause why the property so levied on, should not be sold to satisfy the money contained in said execution, by the sheriff for the time being. The defendant pleaded to the seire facias, that he had paid to the plaintiff, the whole money contained in said execution, except two hundred and three dollars, and as to the said two hundred and three dollars, that he had tendered it to the plaintiff. Issues being joined upon these *283 pleas, they were both found for the defendant, as appears by the record aud a bill of exceptions wherein the facts arc stated as they appeared on the trial below.
In support of the plea of payment, the defendant produced a receipt in the following words, under the plaintiff’s hand.— “ Received 25th March 1825 of Mark Richards and John Black attornies of William L. Earle, five thousand and eighty-three dollars it being the consideration money for the farm in the township of Nottingham — John Earle.” This farm in the township of Nottingham, had been put up for sale at auction on articles of vendue, by the defendant, and being struck off for five thousand and eighty-three dollars to the plaintiff, this receipt was given by him in writing, probably for evidence of the contract, under the statute of frauds relative to the sale of any interest in lands. The plaintiff was put in immediate possession of the farm, but no money was really paid, nor any conveyance made of the farm, at the date of the receipt. In order to make the purchaser liable for the purchase money, it became necessary for the vendor to shew that he was the right owner of the farm, aud had conveyed it to the purchaser, or tendered him a deed. And it appeared that, six or seven months after the date of this receipt, (that is, in October or November following) Richards and Black as attorneys in fact of the vendor, executed a deed to the purchaser, the validity of which was denied. The defendant and his wife had jointly appointed them attorneys, but she had died before they executed the deed, and it was insisted that the death of one joint-principal, was a revocation of the power as to both of the principals, so that it did not convey the interest of either of them. In the mean time, the vendor having married again, united with his second wife Evelina, in jointly executing a new power to the attorneys, who executed another deed of the farm, and sent it to the purchaser. About a week afterward, he returned it to them as an insufficient conveyance. He manifested a steady desire to complete the purchase of the farm, provided the conveyance and the title were good. But the following objections were taken at the trial, against both of them. First as to the deed itself, that a power of attorney must be first proved and recorded, before any deed of land can be made under it, by statute, Rev. Laws, 8, seo. 5; but the execution of the power by *284 Evelina, was never proved ; she only acknowledged it before a Justice of the Peace in Pennsylvania, who had no commission under our laws to take her acknowledgment; therefore it never was lawfully recorded; the attorneys’ deed conveyed no title; the attorneys could not act for either of them severally, under a power to act for them jointly, especially that her right of dower was not barred; and the purchaser could never make out a legal title under the deed of these attorneys, in a court of justice. Secondly. The next reason for refusing to pay the purchase money, was because the title was doubtful, and no purchaser can be compelled to accept of a doubtful title. In Hartley v. Pehall, Peake’s Cas. 131; “ Lord Kenyon said, when a man buys any commodity, he expects to have a clear indisputable title, and not such a one as may be questionable, at least, in a Court of law. No man is obliged to buy a law suit.” Now this is in reality a plain agreement for the sale and purchase of an estate at auction, on the usual terms for paying the money and delivering the deed at the same time, where the party who would sue must shew that he has performed on his part; and this plea is in reality a proceeding at law for the purchase money, or to have the amount of it deducted from a judgment and execution of record, which the purchaser holds against the vendor, when the seller has only a doubtful title. Nay, it appeared that a claimant by the name of Burr, brought an ejectment against the purchaser, for the whole estate except twelve acres, whereupon the vendor requested the purchaser to remain in possession and assist in defending the title, and assured him it should be no prejudice whatever to his execution ; they accordingly defended with united efforts, but it was all in vain, for Burr established his title at law, and the vendor has acquiesced in that decision, ever since.
Instead of answering either of these objections, the defendant’s counsel insisted that the purchaser became liable for the money, by entering into possession of the farm, and accepting a deed, that if the title proved to be defective, his proper remedy was an action on the covenants in the deed. The Court thereupon charged the jury that the purchaser was liable for the money, if he entered into possession and accepted a deed; and whether he accepted the deed or not, was a fact to be settled by the jury; thus placing the cause on a'point of no importance, and which neither party *285 had disputed; whereas they should have been told to decide whether the purchaser after accepting the deed, held it an unreasonable length of time before he rejected it, and sent it back. When a deed is sent for the acceptance of a purchaser, he has an unquestionable right to hold it a reasonable time, in order to investigate the title and the incumbrances on record, and to take advice of counsel on them, before he pays the money. If he detain ic longer in his hands than necessary with reasonáble diligence to examine into the title and to search for incumbrances in the public records, be cannot afterwards return it; the contract as to him will be no longer open, but closed and executed; he will be liable for the purchase money, and he must resort to an action on the covenants in the deed for damages, if the title prove defective. Now in this case the vendor had taken seven or eight months’ time after the sale, for his own convenience, to make out this deed, imperfect as ic is; whereas the purchaser, it appears, returned and rejected it in the short space of a week or less : and the jury was not charged to inquire whether he detained it an unreasonable length of time in his hands, but simply whether he took it, which was evidently erroneous, and therefore the judgment must be reversed.
Ryeksoh, J. concurred in reversing the judgment.

Judgment Reversed.

Cited in Earle v. Earl, Spencer 352-354-357-363; Costner v. Styer, 3 Zab. 253.